UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 11-709-C**

**INDUSTRIAL SERVICES
OF AMERICA, INC.,**                                                                                          **PLAINTIFF,**

**V.**              **MEMORANDUM OPINION AND ORDER**

**ABCOM TRADING PTE. LTD., ET AL.,**                                            **DEFENDANTS.**

\* \* \* \* \* \* \* \* \*

This matter is before the court on the motion of Abcom Trading Pte. Ltd. and Abcom Alloys Pte. Ltd. (collectively, "Abcom") to dismiss for lack of personal jurisdiction or, in the alternative, to stay and compel arbitration (R. 12).  Because Abcom has sufficient contacts with Kentucky that arise from the subject matter of this litigation, namely, its business dealings with Industrial Services of America, Inc. ("ISA"), the court will not dismiss for lack of personal jurisdiction.  However, because the parties agreed to arbitrate disputes in Singapore, and in light of the strong federal presumption in favor of arbitration, the court will stay these proceedings and compel arbitration.  Accordingly, the court will deny Abcom's motion in part and grant it in part.

ISA alleges the following facts in support of its suit.  In 2010 and 2011, Abcom entered into a series of purported contracts with ISA in Kentucky to sell and deliver scrap metal.  Abcom's business was handled by Terry Hancock in ISA's alloys division.  In April 2011, shortly after Hancock's resignation, ISA's President learned that Hancock had wired $1,842,777.44 of ISA funds to Abcom as an

advance payment on scrap metal that ISA had yet to receive.  Abcom allegedly refused to make available the shipping documentation, preventing delivery to ISA of the ordered scrap metal, and demanded additional payment before making delivery.  When ISA refused to make additional payment, Abcom represented to ISA that it sold the undelivered material for an estimated loss of $700,000.  ISA then paid Abcom $1,100,000 in exchange for the original shipping documents.

Abcom allegedly then had seven of the containers full of scrap sent back to Singapore from Vancouver, Canada, instead of having them delivered to ISA.  Abcom paid ISA $406,140.42 for these containers, but ISA alleges that $136,234.22 related to these containers remains unpaid.

ISA asserts that Hancock entered into these purported contracts with Abcom in order to cause financial damage to ISA, that he entered into the contracts without authority from ISA to do so, and that the contracts themselves were unconscionable and were procured by Abcom through misrepresentation.  Citing the arbitration clause in the contracts, Abcom gave notice to ISA of its intent to arbitrate the conflict on December 6, 2011, and invited ISA to submit candidates for an arbitrator.  When ISA did not respond, Abcom submitted a request to the Chairman of the Singapore International Arbitration Centre ("SIAC") to appoint a sole arbitrator, and the SIAC Chairman agreed to do so.  In ISA's complaint, filed December 22, 2011, it requests both damages and a declaratory judgment that it is not bound to arbitrate its disputes with Abcom in Singapore under the authority of

SIAC.  Abcom then moved to dismiss the complaint for lack of personal jurisdiction or, in the alternative, to stay and compel arbitration.

The court is empowered to exercise personal jurisdiction over Abcom for purposes of this action.  Where the court's subject-matter jurisdiction is based on diversity of citizenship, the exercise of personal jurisdiction over a foreign defendant must be explicitly permitted under the state long-arm statute and must comport with due process under the United States Constitution.  *See Fed. R. Civ. P.* 4(k)(1)(A); *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 58 (Ky. 2011).  The Kentucky long-arm statute, KY. REV. STAT. § 454.210(2)(a), provides that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's . . . [t]ransacting any business in this Commonwealth; or . . . [c]ontracting to supply services of goods in this Commonwealth . . . ."  In order for the exercise of personal jurisdiction over Abcom to comport with due process under the United States Constitution, Abcom must have purposefully availed itself of the privilege of conducting activities within Kentucky, the cause of action must arise from Abcom's activities in Kentucky, and Abcom's acts or the consequences of its actions must have a substantial enough connection with Kentucky to make the court's exercise of jurisdiction over Abcom fundamentally fair.  *See Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998).

Because Abcom has such contacts with Kentucky, the court is empowered to exercise jurisdiction over it.  For purposes of this motion under Fed. R. Civ. P. 12(b)(2), the court considers the facts in the light most favorable to ISA, and ISA

need only establish a prima facie showing of jurisdiction to defeat Abcom's motion. *See Compuserve v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). ISA is a Florida corporation with its principal place of business in Louisville, Kentucky; its primary business involves the purchase, sale, and recycling of various scrap metals. *See* Complaint, R. 1, at ¶ 1. Though ISA did not proffer evidence supporting the exercise of jurisdiction, the assertions of fact in the affidavit of Bharat Mandloi, a Director with Abcom, establish sufficient contacts between Abcom and ISA's Kentucky operations to enable this court's exercise of personal jurisdiction over Abcom under the Kentucky long-arm statute and the United States Constitution. According to Mandloi, Abcom entered into twelve contracts with ISA, which were the result of collaborated efforts between the parties, to sell and deliver steel scrap to Kentucky. *See* Mandloi Affidavit, R. 13., ¶¶ 5, 7, 15. Those contracts were negotiated via email and telephone, and though no representatives of Abcom visited Kentucky as part of those negotiations, Mandloi personally visited Kentucky as a representative of Abcom once in 2010 and once in 2011. *Id*. at ¶¶ 16-17. Outside of its dealings with ISA, Abcom does not conduct any other business or supply other goods or services in or to Kentucky. *Id*. at ¶ 18. Given these facts, the court is empowered to exercise jurisdiction under the Kentucky long-arm statue because Abcom has transacted business within the Commonwealth and has contracted to supply scrap metal in the Commonwealth.

Likewise, Abcom has sufficient contacts with Kentucky that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice"

as required for due process under the United States Constitution. *See Compuserve*, 89 F.3d at 1263 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  First, Abcom purposefully availed itself of the privilege of doing business in Kentucky by contracting to deliver goods to a Kentucky corporation in Kentucky.  Its contacts with Kentucky are not merely random, fortuitous, or attenuated, *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), but are both intentional and direct consequences of its contracts with ISA; Mandloi even visited the state twice in the course of conducting Abcom's business with ISA.  Though Abcom itself has no constant physical presence in Kentucky, and though the contracts themselves were negotiated over email and telephone, Abcom purposefully availed itself of Kentucky's laws.  *See Compuserve*, 89 F.3d at 1264.  Second, this suit alleges misrepresentations and/or breach involving these contracts between Abcom and ISA; thus, the cause of action arises from Abcom's activities in Kentucky.  Finally, the exercise of jurisdiction under these circumstances is fundamentally fair, as Abcom could reasonably expect that it might be haled into court in Kentucky based on its course of conduct in its dealings with ISA over 2010 and 2011.  Though the burden on Abcom may be great, the interests of Kentucky and the United States in obtaining justice for their citizens, ISA's interests in obtaining relief, and the judicial interest in efficient resolution of controversies dictate that this court's exercise of jurisdiction over Abcom is proper. *See Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113 (1987).  Such jurisdiction is particularly justified because ISA's case, at this

point, turns on whether the arbitration clause at issue is enforceable under federal and state law.

Even though that arbitration clause is vague and the contracts containing it are disputed by ISA, it is still binding and enforceable.  The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, provides that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  "Any doubts regarding arbitrability must be resolved in favor of arbitration, because there is a strong presumption in favor of arbitration under the FAA." *Glazer v. Lehman Brothers, Inc.*, 394 F.3d 444, 450 (6th Cir. 2005).  The arbitration clause contained in the contracts at issue[1] provides: "[a]ny disputes, controversies, and/or claim arising out of or relating to this agreement or any modification thereto, or any breached or cancellation thereof, which cannot be settled amicably between buyer and seller, shall be settled by arbitration in Singapore."  *See* Complaint, Exhibit A, R. 1-2 at 1.  ISA has argued that it should not be bound by the arbitration clause for a number of reasons, but none of those arguments are sufficiently compelling under the circumstances before the court to defeat the presumption in favor of arbitration.

---

[1] The complaint alleges a dispute arising out of "a series of purported contracts" "[i]n 2010 and early 2011" that "were conducted through Terry Hancock of ISA's alloys division."  R. 1 at ¶ 6.  Hancock resigned in or before April 2011. R. 6 at ¶ 8.  Later agreements, such as those dealings between Abcom and ISA described in paragraphs 12-13 of the complaint, appear to result from the actions giving rise to this suit, and while they may therefore be relevant to determining the amount of any possible damages, they are not relevant to determining whether ISA agreed to arbitrate in the contracts giving rise to this action.  Thus, the July 12, 2011, purported "Purchase Contract" cited by ISA in its response to Abcom's motion that does not contain an arbitration clause is not relevant to determining whether ISA agreed to arbitrate the dispute at the heart of this action.

The purported contracts sufficiently demonstrate that ISA and Abcom agreed to arbitrate.  *See Glazer v. Lehman Brothers, Inc.*, 394 F.3d 444, 451 (6th Cir. 2005).  In determining whether the parties so agreed, any ambiguities in the contracts themselves or doubts as to the parties' intentions are resolved in favor of arbitration. *See Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).  To prevent an order compelling arbitration ISA must show, pursuant to the procedures in Fed. R. Civ. P. 56(c), that a genuine dispute of material fact exists as to the validity of the agreement to arbitrate. *Id*.  ISA has presented no affirmative evidence of such a genuine dispute; instead, it offers conclusory statements in its complaint and response that Hancock entered into the purported contracts with Abcom, without authority to do so, in order to financially damage ISA.  In the absence of affirmative evidence, and resolving all doubts in favor of arbitration, the court finds that ISA's conclusory statements regarding Hancock's intentions or the possibility that Hancock conspired with Abcom are not credible and cannot serve as proof that ISA did not agree to arbitrate.  Whether ISA agreed to arbitrate is therefore determined, in this case, by agency principles.

> An agent has power to make contracts which will bind his principal not only when actually authorized to do so by express words or inference of fact, but also in cases where the principal did not intend to confer such authority on the agent but, nevertheless, held out to the public or to the person with whom the agent dealt an appearance of authority.

12 RICHARD A. LORD, WILLISTON ON CONTRACTS § 35:11 (4th ed.); *see Williams v. St. Claire Medical Center*, 647 S.W.2d 590, 596-597.  ISA argues that Abcom knew or should have known that Hancock was not acting in ISA's interests; however,

Hancock was employed by ISA in a position where he had apparent authority to enter into the disputed contracts with Abcom, and ISA was aware that it, as an entity, was engaged in business with Abcom, as evidenced by Mandloi's visits to Kentucky in 2010 and 2011.  Thus, ISA may be bound to the purported contracts even if Hancock, or someone else in a similar position at ISA, exceeded his actual authority to make such contracts.  Under the presumption in favor of arbitration, such a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator, even where the contract that contains the arbitration clause may be later found by the arbitrator to be void or fraudulently induced. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 448-449 (2006).

ISA has also alleged that the arbitration clause itself was fraudulently induced.  If ISA had provided any evidence of fraudulent inducement that went specifically to the arbitration clause, that issue would be cognizable by the court, *see C.B.S. Employees Fed. Credit Union v. Donaldson, Lufkin, & Jenrette Securities Corp.*, 912 F.2d 1563, 1568 (6th Cir. 1990); however, having submitted no such evidence, ISA has not met its burden of showing a material dispute on this issue that would prevent an order compelling arbitration pursuant to FAA § 4.

ISA also argues that the arbitration clause itself is unenforceable because it does not contain definite and certain terms as required under Kentucky law. While the court employs state contract law principles to determine whether an arbitration agreement is enforceable, *see Floss v. Ryan's Fam. Steak House, Inc.*, 211 F.3d

8

306, 314 (6th Cir. 2000), and under Kentucky law, a contract must contain "definite and certain terms" to be enforceable, *see Kovacs v. Freeman*, 957 S.W.2d 251, 254 (Ky. 1997), the lack of terms other than venue – Singapore – in this arbitration agreement does not make the agreement unenforceable.  Both the FAA and comparable law in Singapore provide mechanisms for parties to employ when either the method for choosing an arbitrator is not specified by the agreement or the parties simply cannot agree: FAA § 5 provides that in such situations, the parties may petition a court to appoint an arbitrator; the International Arbitration Act (Cap 143 A) of Singapore at § 8(2), incorporating by reference Articles 6, 11(3), and 11(4) of the UNCITRAL Model Law, provides that the SIAC Chairman shall appoint an arbitrator when the parties cannot agree.

In the cases that ISA cites for its assertion that an arbitrator chosen by the parties is an essential element of an agreement to arbitrate, such as *Hooters of America, Inc. v. Phillips*, 39 F.Supp.2d 582, 618 (D.S.Car. 1998), the courts were addressing arbitration provisions that essentially prevented one party from being able to choose an impartial arbitrator.  In the instant case, the arbitration clause did not prevent ISA from working with Abcom to jointly select an arbitrator.  ISA voluntarily waived its right to select an arbitrator when it elected not to respond to Abcom's notice of arbitration and chose instead to initiate this action.  In doing so, ISA took the risk that Abcom would employ its rights under the International Arbitration Act of Singapore to have an arbitrator appointed by the SIAC Chairman,

9

and that ISA would be bound to arbitrate under such an appointed arbitrator if this court found the arbitration clause enforceable.

Likewise, the failure of the arbitration clause to specify a forum and procedures for arbitration – for instance, those of the SIAC or the Association for International Arbitration – does not render the agreement unenforceable.  An agreement to arbitrate need not spell out the exact terms of arbitration to be enforceable.  *See, e.g., Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 90-91 (2000) (arbitration agreement not invalidated by failure to address fees and costs); *Blinco v. Green Tree Servicing, LLC,* 400 F.3d 1308, 1312-13 (11th Cir. 2005) (arbitration agreement not invalided by failure to specify identity of arbitrator, forum, location or allocation of costs).  The strong presumption in favor of arbitration dictates that where the agreement is silent, the parties, having agreed to arbitrate their disputes, can and must agree to terms and procedures to govern their arbitration.  *See Green Tree Financial*, 531 U.S. at 91-92.

Having determined that the parties agreed to arbitrate, the court must make additional threshold determinations before compelling arbitration:

> second, it must determine the scope of the agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Glazer v. Lehman Brothers, Inc.*, 394 F.3d 444, 451 (6th Cir. 2005).  In this case, the remaining threshold determinations can be quickly dispatched: the arbitration clause governs the entirety of the current cause of action because it arises out of

and is related to the purported contracts, *see* Complaint, R. 1, at ¶¶ 6-20, and no federal statutory claims are asserted. Thus, the court will stay this proceeding and compel arbitration pursuant to FAA §§ 3-4.

Finally, ISA also suggests that, in the event the court finds the arbitration clause enforceable, ISA should be allowed to engage in discovery to determine the impartiality of SIAC. The court construes this suggestion as a motion and will deny it for the following reasons: first, ISA has alleged no facts that would bring the impartiality of SIAC into question; and second, SIAC need not necessarily serve as the forum for arbitration. Even though ISA agreed to arbitrate in Singapore, it did not agree to arbitrate under the rules of the SIAC; the SIAC Chairman is involved pursuant to Singapore law only to the extent of appointing an arbitrator because ISA declined to respond to Abcom's request for nominations, choosing instead to initiate this action. The SIAC Chairman's involvement in appointing an arbitrator does not bind the parties to follow SIAC procedures or to employ SIAC as the forum for their arbitration, nor can it unless ISA and Abcom agree to be so bound, which they have not.

Accordingly, the court **ORDERS AS FOLLOWS:**

(1) Abcom's motion (R. 12) is **GRANTED IN PART AND DENIED IN PART**. The parties **SHALL**, pursuant to 9 U.S.C. § 4, proceed to arbitration in accordance with the terms of the agreement.

(2) This matter is **STAYED,** pursuant to 9 U.S.C. § 3, until such arbitration is complete.

(3)  The parties shall file a joint written status report as to the status of that arbitration no later than October 19, 2012.

(4)  ISA's construed motion to allow discovery is **DENIED**.

(5)  ISA's motion for expedited ruling on these matters (R. 21) is **GRANTED**.

Signed on April 18, 2012

Jennifer B. Coffman, Judge
United States District Court

12